**VEDDER PRICE (CA), LLP**
Michael A. Wahlander (SBN #260781)
mwahlander@vedderprice.com
1 Post Street, Suite 2400
San Francisco, CA 94104
T:  +1 415 749 9500
F:  +1 415 749 9502

Attorneys for Defendants

WATERCO OF THE CENTRAL STATES,
INC. and CULLIGAN INTERNATIONAL
COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN PEREZ, on behalf of all others similarly situated, | Case No. **'25 CV0922 BEN KSC** |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. SECTIONS 1332(d) AND 1441** |
| WATERCO OF THE CENTRAL STATES, INC.; CULLIGAN INTERNATIONAL COMPANY; CULLIGAN BY WATERCO DBA CULLIGAN; and DOES 1 through 50, inclusive, | |
| Defendants. | |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants WATERCO OF THE CENTRAL STATES, INC. ("Waterco"), and CULLIGAN INTERNATIONAL COMPANY ("Culligan") (collectively, "Defendants") hereby removes the above-entitled action, Case No. 25CU013404C, from the Superior Court of the State of California, County of San Diego, to the U.S. District Court for the Southern District of California, asserting original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.

## PLEADINGS, PROCESS, AND ORDERS

1. On March 14, 2025, Plaintiff Nathan Perez ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of San Diego, entitled *NATHAN PEREZ, on behalf of all other similarly situated, Plaintiff, v. WATERCO OF THE CENTRAL STATES, INC.; CULLIGAN INTERNATIONAL COMPANY; CULLIGAN BY WATERCO, DBA CULLIGAN; and DOES 1 through 50, inclusive, Defendants*, Case Number 25CU013404C (the "State Court Action"). A true and correct copy of the Summons and Complaint is attached as **Exhibit A**.

2. The Complaint purports to allege the following ten (10) claims for relief: (1) Failure to Pay All Wages Owed; (2) Failure to Pay Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Paid Sick Leave Violations; (6) Untimely Payment of Wages; (7) Wage Statement Violations; (8) Waiting Time Penalties; (9) Failure to Reimburse Business Expenses; and (10) Unfair Competition. (*See* Ex. A ("Compl.") ¶¶ 45-89.)

3. The Complaint seeks to certify the following class: "all current and former non-exempt employees of Defendants in California at any time commencing

from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through date of class certification." (Ex. A., Compl. ¶ 22.)

4.    Attached as **Exhibit B** is a true and correct copy of all other documents served on Defendants (except the Summons and Complaint).

5.    On April 17, 2025, Defendants filed an answer in the State Court Action ("Answer"). A conformed copy could not be made available in time for the filing of this Notice of Removal. A true and correct copy of the Answer, along with the confirmation of submission for filing from Nationwide Legal, is attached hereto as **Exhibit C**.

6.    **Exhibits A–C** constitute all pleadings, process, and orders served on any defendant, and filed by any defendant, in this action.

## TIMELINESS OF REMOVAL

7.    Plaintiff served his Summons and Complaint on Defendants on March 18, 2025. This Notice of Removal is timely because it is filed within thirty (30) days of the service upon Defendants of a copy of the Summons and the Complaint, and within one (1) year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (thirty (30) day removal period begins when defendant is formally served).

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

8.    This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a purported class action in which a class member is a citizen of a state different from that of a defendant (28 U.S.C. §§ 1332(d)(2) and (6)), and the number of putative class members is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

## I.    THERE IS MINIMAL DIVERSITY FOR REMOVAL UNDER CAFA

9.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction.  That is, at least one purported class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A) ("[A]ny member of a class of plaintiffs is a citizen of a State different from any defendant"); *Broadway Grill, Inc. v. Visa Inc*., 856 F.3d 1274, 1276 (9th Cir. 2017) ("Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant."); *see also Mesa v. Enloe Med. Ctr*., 2021 WL 1187274 (E.D. Cal. Mar. 30, 2021) (finding CAFA's requirement of minimal jurisdiction met in class action case against two defendants, where one defendant was of the same citizenship as plaintiff, but the other defendant was of a different citizenship).  Here, such minimal diversity exists among the parties.

### A.    Plaintiff Is A Citizen Of California

10.    For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *See Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place where he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

11.    Plaintiff is a resident of the State of California.  (*See* Declaration of Mary Odegaard in Support of Defendant's Notice of Removal of Civil Action to Federal Court ("Odegaard Decl.") ¶ 18.)  Throughout his employment, Plaintiff has

maintained a California address with Defendants.  Plaintiff's last known address is in Fairfield, California.  (*See id.*)  Plaintiff filed this lawsuit in California.  Accordingly, Plaintiff is, and has been at all times since the institution of this action, a citizen of the State of California.

> **B.    Defendants Waterco And Culligan Are Not Citizens Of California[1]**

12.    Culligan is now, and was at the time the State Court Action was commenced, a citizen of the state of Delaware and the state of Illinois within the meaning of 28 U.S.C. § 1332(c)(1), because it is now and was at all relevant times incorporated under the laws of the State of Delaware and it maintains, and at all material times maintained, its corporate headquarters and principal place of business in the state of Illinois.  (Odegaard Decl. ¶ 6.)  Rosemont, Illinois is the site of Culligan's corporate headquarters, where their high-level officers direct, control, and coordinate Culligan's activities.  (*Id.*)  The majority of Culligan's executive officers are located in Rosemont, Illinois, and the majority of Culligan's executive and administrative functions are directed from Rosemont, Illinois.  (*Id.*)  Accordingly, Culligan's principal place of business is in Rosemont, Illinois under the "nerve center" test.  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  It is not now, and was not at the time of the filing of the Complaint, a citizen of the state of California.  (*Id.*)

13.    Waterco is now, and was at the time the State Court Action was commenced, a citizen of the state of Delaware and the state of Illinois within the meaning of 28 U.S.C. § 1332(c)(1), because it is now and was at all relevant times incorporated under the laws of the state of Delaware and it maintains, and at all material times maintained, its corporate headquarters and principal place of business in the state of Illinois.    (Odegaard Decl. ¶ 7.)  Lombard, Illinois is the site of

---

[1] Defendant "Culligan by Waterco DBA Culligan" is erroneously named because it is not an existing entity.  Plaintiff alleges that it is an Illinois company in any event.  (Compl. at ¶ 17.)

Waterco's corporate headquarters, where their high-level officers direct, control, and coordinate Waterco's activities. (*Id*.)  The majority of Waterco's executive officers are located in Lombard, Illinois, and the majority of Waterco's executive and administrative functions are directed from Lombard, Illinois. (*Id*.)  Accordingly, Waterco's principal place of business is in Lombard, Illinois under the "nerve center" test. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  It is not now, and was not at the time of the filing of the Complaint, a citizen of the state of California. (*Id*.)

14.    Accordingly, pursuant to 28 U.S.C. section 1332(c), both Plaintiff and Culligan and Plaintiff and Waterco have diverse citizenship.  Therefore, CAFA diversity is satisfied because at least one plaintiff is diverse from at least one defendant. *See Broadway Grill*, 856 F.3d at 1276 ("Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant.").

C.    **The Court Should Disregard Doe Defendants' Citizenship**

15.    Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) ("[U]known  defendants sued as "Does" need not be joined in a removal petition").  Thus, the existence of Doe defendants 1 through 50, inclusive, does not deprive this Court of jurisdiction.

D.    **Defendants Are Not Governmental Entities**

16.    Neither of the named Defendants is a state, a state official, or some other governmental entity.

E.    **There Are More Than 100 Putative Class Members**

17.    CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100. *See* 28 U.S.C. § 1332(d)(5)(B).  In the Complaint, Plaintiff alleges that he seeks to certify a putative class consisting of "all current and former non-exempt employees of Defendants in California at any time

commencing from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through date of class certification." (Ex. A., Compl. ¶ 22.)

18.　From March 14, 2021 to March 28, 2025, there were approximately 215 employees who fall within the putative class defined by Plaintiff.  (Odegaard Decl. ¶ 11.)  Thus, the requisite number of at least 100 putative class members is satisfied here.

## II.　PLAINTIFF'S CLAIMS PLACE MORE THAN $5,000,000 IN CONTROVERSY

### A.　Defendants Need Only Show That The Amount In Controversy Exceeds The Statutory Minimum

19.　 While Defendants deny any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of the allegations and assuming liability (which Defendants dispute) is established.  Likewise, these calculations are based on the putative classes alleged in the Complaint, and in no way indicate that class treatment is appropriate in this case, or that Plaintiff has standing to represent any such class, or that the classes proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, class definitions, and calculation of damages in all respects.  However, for purposes of removal, Defendants base their calculations on the allegations, facts known to Defendants, and class definitions pleaded by Plaintiff.

20.　Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to

be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. No. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. No. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.    To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014).

22.    Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted).).

23.    When the amount in controversy is not readily apparent from a complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir.

2005) (quoting *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co*., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000).

24.    Moreover, a plaintiff cannot evade federal jurisdiction by merely alleging that the amount in controversy falls below the jurisdictional minimum. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 978-82 (9th Cir. 2013).

**B.    The Total Amount In Controversy Exceeds $5,000,000**

**1.    Rest Break Claim**

25.    In his rest break claim, Plaintiff alleges that in the four (4) years prior to the filing of the Complaint, Defendants "required Plaintiff and the class members to work through their days without breaks." (Compl. ¶ 39.) Plaintiff further alleges that, "*as a matter of policy and practice*, Defendants failed to pay all rest period premiums owed." (*Id.*) (emphasis added). Plaintiff also alleges that "to the extent that Defendants did pay rest period premiums, they were under paid." (*Id.*)

26.    Generally, employers must authorize and permit a net ten (10) minute paid rest period for every four (4) hours worked or major fraction thereof. 8 Cal. Code Reg. § 11070(12)(A). However, a rest period need not be authorized for employees whose total daily work time is less than 3.5 hours. *Id.* If an employer fails to provide an employee a rest break in accordance with California law, the employer shall pay an additional hour of pay at the employee's regular rate of compensation for each workday that a rest period is not provided. *Id.* at § 11070(12)(B); Cal. Lab. Code § 226.7(c).

27.    A total of 58,944 shifts for hourly employees during the relevant time period were at least 3.5 hours in length. (Odegaard Decl. ¶ 12.) The average hourly rate for Defendants' hourly non-exempt employees during the relevant time period was $23.80. (*Id.*)

Based on the plain text of Plaintiff's allegations, a 100% violation rate is a reasonable assumption. *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (stating that the defendant could utilize an alleged 100% violation rate in calculating the amount in controversy because Plaintiff's complaint alleges a uniform practice of meal and rest period violations); *see also Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (100% violation rate may be reasonable assumption where complaint offered no guidance as to the frequency of the alleged violations, only that Defendant had "a policy and practice" of meal and rest period violations).

28.    Thus, assuming a 100% violation rate, the damages for Plaintiff's rest break claim would be **$1,402,867.20** [$23.80 x 58,944 shifts that were at least 3.5 hours in length].

### 2.    Meal Break Claim

29.    In his meal break claim, Plaintiff alleges that in the four (4) years prior to the filing of this Complaint, "Plaintiff and the class members *often* experienced missed, late, short, and interrupted meal periods to keep up with the demands of the job" and "rather than pay all owed meal period premiums, Defendants *often* edited Plaintiff and the class members to avoid meal period penalties." (Compl. ¶ 35.) (emphasis added.)

30.    Plaintiff further alleges that, "Defendants *often* instructed Plaintiff and the class members to clock out for their meal period and continue to work" and that "[e]ach time Plaintiff and the class members clocked out and continued to work through their meal periods, Defendants owed a meal period premium." Plaintiff alleges that, "*as a matter of policy and practice*, Defendants failed to pay all owed meal period premiums." Moreover, Plaintiff alleges that when "Plaintiff and the class members were able to take a meal period before their fifth hour of work, they were *often* interrupted." Further, Plaintiff alleges that, "[to] the extent Defendants did pay meal period premiums, they were underpaid." (*Id*. ¶¶ 36-38.) (emphasis added).

Finally, Plaintiff alleges that, "Plaintiff and class members are entitled to recover the full amount of the meal period premiums owed, in addition to interest, statutory and civil penalties, and attorneys' fees, and costs to the extent permitted by law." (*Id*. ¶ 57.)

31.     Labor Code section 512 provides that employees must be provided with no less than a thirty (30) minute meal period when the work period is more than five (5) hours, except the employer and employee may consent to waive the meal period if the total work period is less than six (6) hours.  Cal. Lab. Code § 512(a).  If an employer fails to provide an employee a meal break in accordance with California law, the employer shall pay an additional hour of pay at the employee's regular rate of compensation for each workday that a meal period is not provided.  Cal. Lab. Code § 226.7(c).

32.     Hourly employees of Defendants during the relevant time period worked a total of 57,827 shifts that were at least five (5) hours in length.  (Odegaard Decl. ¶ 12.)  The average hourly rate for Defendants' hourly non-exempt employees during the relevant time period was $23.80.  (*Id.*)

33.     Based on Plaintiff's allegations that these violations occurred "often," Defendant assumes a conservative 60% violation rate.  *Sanchez v. Abbott Labs*., 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (reasonable to assume 60% rest break violation rate based on complaint's allegation of "pattern and practice" of denying such breaks); *see also Oda v. Gucci Am., Inc*., 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (reasonable to assume 50% violation rate where class members "*sometimes*" did not receive all breaks and defendant-employer "maintained a policy or practice" of not compensating employees for missed breaks).

34.     Thus, assuming a 60 % violation rate, the damages for Plaintiff's meal break claim would be **$825,769.56**  [$23.80 x (57,827 shifts that were at least five (5) hours in length x 0.60)].

//

### 3.     Overtime Claim

35.     Plaintiff alleges that in the four (4) years prior to the filing of this Complaint through the present, Defendants violated the California Labor Code by failing "to include all additional remuneration in the regular rate of pay for purposes of calculating overtime pay.  Specifically, Plaintiff and the class members earned bonuses for upselling clients on maintenance plans and on-call pay.  To the extent these additional forms of remuneration constitute non-discretionary bonuses, Defendants failed to include these additional payments in the regular rate of pay when calculating overtime.  Instead, Defendants unlawfully paid Plaintiff and the class members at 1.5x their base rate, resulting in unpaid overtime wages." (Compl. ¶ 31.)

36.     Plaintiff further alleges that "Defendants failed to pay all overtime wages earned due to its unlawful practices of requiring off-the-clock work and time editing.  When these additional unpaid hours resulted in more than 8 hours worked in a day or more than 40 hours in a week, Defendants owed Plaintiff and the class members pay at l.5x their regular rate of pay.  However, due to Defendants' unlawful policies of requiring off the clock work and time editing, Defendants failed to pay all overtime wages owed." (Compl. ¶ 32.)  Finally, Plaintiff alleges that "Plaintiff and class members are entitled to recover the full amount of the unpaid overtime, in addition to interest, statutory and civil penalties, and attorneys' fees, and costs to the extent permitted by law." (*Id.* ¶ 52.)  While Plaintiff's allegations as to the value of these overtime claims are unclear, these claims only increase the amount in controversy—even based on minimal assumptions.

37.     Labor Code section 510 provides that each non-exempt employee is entitled to be paid one and one-half times his regular rate of pay for time worked in excess of eight (8) hours per workday and/or more than forty (40) hours per workweek.  Cal. Lab. Code § 510.

38.     Defendants make a conservative assumption that Plaintiff and the putative class worked twelve (12) minutes off the clock per day, which is 1 hour per

week. *See Cabrera v. S. Valley Almond Co., LLC*, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (one hour of overtime per week reasonable estimate where plaintiff alleged overtime violations occurring "at times" or "on occasion"); *see also Serrieh v. Jill Acquisition LLC*, 2023 WL 8796717, at *5 (one hour of overtime per week reasonable estimate when plaintiff alleged a "policy and practice" of failing to pay overtime wages).

39.    The average hourly rate for Defendants' hourly non-exempt employees during the relevant time period was $23.80. (Odegaard Decl. ¶ 12.) Those employees worked a total of at least 44,392 workdays of at least eight (8) regular hours during the relevant time period. (*Id.* at ¶ 13.) Accordingly, the California overtime claims would be worth an additional: **$316,958.88** [$23.80 (average hourly rate) x 1.5 x 0.2 (estimated OT hours per day) x 44,392 (days with at least eight (8) hours for Proposed Class)]. But Plaintiff's allegations that Defendants failed to include incentive payments indicate that he thinks this number is much higher.

### 4.    Minimum Wage/Off The Clock Claim

40.    Plaintiff alleges that Defendants "failed to pay Plaintiff and the class members at the lawful minimum wage rate for all hours worked, resulting in unpaid minimum wages." Specifically, Plaintiff alleges that Defendants "often required Plaintiff and the class members to complete off the clock work," "engaged in unlawful practice of time editing resulting in unpaid hours worked," and "failed to pay Plaintiff and the class members for all on-call hours worked." (Compl. ¶¶ 27-30.) Finally, Plaintiff alleges that "Plaintiff and class members are entitled to recover the full amount of the unpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid (and interest thereon). . . ." (*Id.* ¶ 48.)

41.    An employee is entitled to recover unpaid wages for all hours worked pursuant to California Labor Code section 1197.1. Furthermore, in any action under California Labor Code section 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute,

an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Cal. Lab. Code § 1194.2(a), such as Plaintiff seeks here. (Compl. ¶¶ 46-48.)

42. Defendants make a conservative assumption that Plaintiff and the putative class worked twelve (12) minutes off the clock per day, which is an estimated 1 hour per week. *See Demaria*, 2023 WL 6390151, at *7 (assumption that one hour of unpaid minimum wage per week occurred when plaintiff alleges minimum wage violation occurred "at times" is reasonable); *see also Cabrera*, 2021 WL 5937585, at *8 ("[A]ssumptions of . . . one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion.'").

43. The number of days worked by class members, where the regular hours worked was less than eight (8) hours,[2] during the relevant period is 15,263 days. (Odegaard Decl. ¶ 17.) The average hourly rate for California employees during the relevant period is $23.80. (*Id*.)

44. Defendants estimate liability using the average hourly rate for employees. *See Serrieh*, 2023 WL 8796717, at *6 (finding minimum wage claim calculation reasonable where defendant multiplied the number of workweeks by the average hourly rate by one hour per week). Using the average hourly rate of $23.80 to compute the value of Plaintiff's minimum wage claims, Plaintiff's minimum wage claims would be worth **$72,651.88** [$23.80 x 0.2 x 15,263 days where less than eight (8) regular hours were worked, to avoid double counting with the overtime claim]. Further, given the request for liquidated damages (Complaint, ¶¶ 46-48), it is reasonable to double this to account for liquidated damages, so the reasonable estimated liability for this claim is **$145,303.76**.

//

---

[2] Defendants only count those days with fewer than eight (8) hours to prevent double counting with estimated liability for off the clock work for the overtime claims.

1

### 5.    Waiting Time Penalties

45.    Plaintiff's eighth cause of action alleges that Defendants must pay waiting time penalties under Labor code section 203 failure to pay all wages owed upon termination. (*See* Compl. ¶¶ 77-80.) Plaintiff alleges that "Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her intention to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders." (*Id*. ¶ 79.)

46.    Plaintiff further alleges that, "Plaintiff and class members are entitled to recover a waiting time penalty for a period of up to 30 days, in addition to interest, attorneys' fees, and costs to the extent permitted by law." (*Id*. ¶ 80.)  In support of his claim, Plaintiff realleges and incorporates by reference all of the preceding paragraphs, including his allegations that the Defendants failed to pay all wages owed, to pay overtime wages, to provide meal breaks, to authorize and permit rest periods, to pay sick time properly at the regular rate of pay, to timely pay wages, to provide accurate itemized wage statements. (*Id*. ¶¶ 1-76.)

47.    If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, including earned vacation wages.  Cal. Lab. Code §§ 201, 227.3.  Where the employer willfully violates the provisions of Labor Code sections 201-202 regarding timing of payment, Labor Code section 203 provides "waiting time penalties" of up to 30 days' wages.  *Id.* § 203.  Other forms of wages, such as overtime premium pay and missed-break premium pay that are due but are not paid at the time of termination, trigger derivative waiting time penalties.  *See, e.g.*, *Naranjo v. Spectrum Sec. Servs., Inc*., 13 Cal. 5th 93, 117 (2022) (analyzing Cal. Lab. Code §§ 201-203).

48.    From March 14, 2021 to March 28, 2025, there were approximately 127

VEDDER PRICE (CA), LLP.
ATTORNEYS AT LAW
SAN FRANCISCO

employees who were terminated. (Odegaard Decl. ¶ 14.) The average rate of pay for these employees during the relevant time period was $22.97. (*Id*. at ¶ 15.) The average hours worked per employee each workday during the relevant time period was 7.55 hours per day. (*Id.*)

49.    Given Plaintiff's allegations alone, Defendants could reasonably assume a 100% violation rate. *See Demaria*, 2023 WL 6390151, at *7 (approving a 100% violation rate for waiting time penalties reasonable because, where a plaintiff alleged meal and rest break violations occurring "at times," "it is also reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties"); *see also Serrieh*, 2023 WL 8796717, at *5 (100% violation rate for Labor Code section 203 claim reasonable based on meal and rest break violations occurring "at times"). This assumption is also reasonable given the reasonable 100% violation rate for rest breaks, and all the terminated employees worked at least one shift 3.5 hours or more. (Odegaard Decl. ¶15.)

50.    Accordingly, although Defendants dispute liability, a reasonable and conservative estimate of the amount in controversy for Labor Code section 203 penalties is **$660,743.54** [$22.97/hour x 7.55 hours/day x 30 days x 127 employees].

### 6.    Inaccurate Wage Statement Claim

51.    Plaintiff also alleges that, "Defendants knowingly and intentionally failed in their affirmative obligation to provide accurate itemized wage statements to Plaintiff and class members resulting in injury to Plaintiff and class members. Specifically, the wage statements issued to Plaintiff and class members did not accurately state each pay period all of the information required by Labor Code § 226(a)(l)-(9)." (Compl. ¶ 74.) Defendants' unlawful acts and omissions allegedly deprived Plaintiff and class members of accurate itemized wage statements, causing confusion and concealing wage and premium underpayments. As a result, Plaintiff and class members are allegedly entitled to recover the statutory penalty of $50 per employee for the initial pay period in which a violation occurred and $100 per

employee for each violation in a subsequent pay period, up to an aggregate penalty of $4,000 per employee, in addition to interest, attorneys' fees, and costs to the extent permitted by law, including under Labor Code section 226(e). (Compl. ¶¶ 75-76.)

52.   An employer shall furnish to their employee an accurate itemized written statement showing gross wages earned; total hours worked; net wages earned; and the inclusive dates of the period for which the employee is paid; among other things. Cal. Lab. Code § 226(a). An employee's wage statement that does not accurately reflect gross wages earned, net wages earned, and credited hours worked due to other wage and hour violations triggers derivative inaccurate wage statement penalties. *See, e.g.*, *Naranjo*, 13 Cal. 5th at 121 (analyzing Cal. Lab. Code § 226). The penalties under Labor Code § 226 are $50 for the first violation and $100 for each subsequent violation, not to exceed an aggregate of $4,000.00 an employee. Cal. Lab. Code § 226(e).

53.   The total number of hourly employees for Defendants in California from March 14, 2021 to March 28, 2025 is 215. (Odegaard Decl. ¶ 16.) The total number of pay periods for these employees during this time period is 7,906. (*Id*.) Defendants could reasonably assume a 100% violation based on Plaintiff's allegations. *See Serrieh*, 2023 WL 8796717 (approving a 100% violation rate for Labor Code section 226 claim based off assumption of weekly violations for both meal and rest period claims that allegedly took place "at times" and "from time to time").[3]

54.   Based on Plaintiff's allegations and applying the $4,000 cap imposed by Labor Code section 226, a reasonable and conservative estimate for Plaintiff's inaccurate wage statement claim would be **$516,400** [(215 x $50 per employee for

---

[3] Of the 7,906 pay periods during this time period, 7,734 had shifts where the employee worked at least 3.5 hours, which means that all of those pay periods would have rest period violations based on Plaintiff's allegations. (Odegaard Decl. ¶ 16.) Using that number, the calculation for the Labor Code section 226 penalties would be **$499,400** [(215 x $50) + ($100 x [7,734-215])].

the initial violation) + ((7,906 - 215) x $100)] (but setting the maximum liability for each employee to $4,000).

### 7.     Failure To Timely Pay Wages Claim

55.     Plaintiff alleges that "Defendants willfully failed in their affirmative obligation to timely pay all wages, including paid sick leave and meal and rest premiums, earned by Plaintiff and class members twice during each calendar month on days designated in advance by the employer as regular paydays (for employees paid on a non-weekly basis) and on the regularly-scheduled weekly payday for weekly employees, if any, in violation of Labor Code sections 204 and 204b and the IWC Wage Orders (the 'Minimum Wages' sections of the applicable orders)." (Compl. ¶ 70.)  Plaintiff further alleges that "Plaintiff and class members are entitled to recover the full amount of the unpaid wages, in addition to a statutory penalty in the amount of $100 for the initial violation for each failure to pay each employee and $200 for all subsequent violations and for all willful or intentional violations for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld under provided in Labor Code § 210, in addition to interest, attorneys' fees, and costs to the extent permitted by law." (*Id.* ¶ 71.)

56.     Labor Code section 204 provides that "*all wages* . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."  Cal. Lab. Code § 204 (emphasis added).  Labor Code section 210, subdivision (a) authorizes the following penalties for a Labor Code section 204 violation: "(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee" and "(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." *Id.* § 210(a).

57.     The total number of hourly employees for Defendants in California from March 14, 2021 to March 28, 2025 is 215.  (Odegaard Decl. ¶ 16.)  The total number

of pay periods for these employees during this time period is 7,906. (*Id.*) Defendants could reasonably assume a 100% violation based on Plaintiff's allegations, particularly because Plaintiff says Defendants never provided rest breaks. *See Rapisura v. BMW of N. Am., LLC*, 2022 WL 1557001, at *4 (E.D. Cal. May 17, 2022) (finding a 100% violation rate for failure to timely pay wages claim reasonable where plaintiff alleges that defendant has a "pattern, practice, and uniform administration of its corporate policy" to deny employees compensation). As a result, a reasonable and conservative estimate for Plaintiff's failure to timely pay wages claim would be **$1,559,700.00** [(215 x $100 per employee for the initial violation) + ((7,906 - 215) x $200 for subsequent violations)].[4]

58.    Furthermore, Defendants' estimates do not include the 25% of allegedly withheld wages that Plaintiff and putative class members can claim for subsequent violations, and thus the amount in controversy for this claim is justifiably more than Defendant's estimates. *See Rapisura*, 2022 WL 1557001, at *4 (noting that defendant's estimates that did not include 25% of the alleged withheld wages for failure to timely pay wages claim were "lower than what would be justified").

Accordingly, taking into account all the above estimates and before attorneys' fees, the amount in controversy is **$5,427,742.94**,[5] which exceeds the jurisdictional minimum.

### 8.    Attorneys' Fees

59.    The Complaint also seeks attorneys' fees under all ten (10) purported

---

[4] As noted above, of the 7,906 pay periods during this time period, 7,734 had shifts where the employee worked at least 3.5 hours, which means that all of those pay periods would have rest period violations based on Plaintiff's allegations. (Odegaard Decl. ¶ 16.) Using that number, the calculation for the Labor Code section 210 penalties would be **$1,525,300.00** [(215 x $100) + ($200 x [7,734 - 215])].

[5] The amount in controversy is **$5,376,142.94** if the alternate calculations for penalties under Labor Code sections 226 and 210 from footnotes 3 and 4 are considered (i.e., using 7,734 shifts with violations).

claims.  (Compl. Prayer ¶ h).  Requests for attorneys' fees may be taken into account in ascertaining the amount in controversy for purposes of removal.  *Longmire v. HMS Host U.S., Inc*., Case No. 12-cv-2203, 2012 WL 5928485, at * 9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over amount in controversy under CAFA") (citing *Brady v. Mercedes-Benz USA, Inc*., 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Serrieh*, 2023 WL 8796717, at *7 (attorneys' fees appropriately included in determining amount in controversy).

60.    In the class action context, courts have found that twenty-five percent (25%) of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Leander v. Accent Controls, Inc.*, 2025 WL 301294, at *8 (S.D. Cal. Jan. 27, 2025) (adopting a twenty-five percent (25%) benchmark for attorneys' fees in context of determining amount in controversy under CAFA); *see also Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *10 (C.D. Cal. May 9, 2018); (approving, in a similar CAFA wage and hour case, a twenty-five percent (25%) benchmark "to be added to any claim for which attorneys' fees [was] available"); *see also Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims"); *see also Fong v. Regis Corporation*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

61.    Thus, even under the conservative benchmark of 25% of the total recovery, attorneys' fees based on the amount in controversy established above using

conservative estimates is **$1,356,935.73** [$5,427,742.94 x .25].[6]

62.    As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement.  Indeed, using a conservative estimate and taking into account only 7 of Plaintiff's 10 claims, as well as his request for attorneys' fees, the total amount in controversy is at least **$6,784,678.67**.  Because the amount in controversy exceeds $5,000,000, the Court has jurisdiction under CAFA.[7]

## VENUE

63.    Venue lies in the U.S. District Court for the Southern District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(c)(2).  This action originally was brought in the Superior Court of California, County of San Diego.  Therefore, it is properly removed to this district.

## NOTICE OF REMOVAL

64.    This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of California, County of San Diego.

## PRAYER FOR REMOVAL

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of California, County of San Diego, to the U.S. District Court for the Southern District of California.

Dated:        April 17, 2025            VEDDER PRICE (CA), LLP

By: /s/ Michael A. Wahlander
_____
Michael A. Wahlander

Attorneys for Defendants

Waterco of the Central States, Inc. and Culligan International Company

VP/#70763907.6

---

[6] Using the alternate calculation from footnotes 3-5, the attorneys' fees would be **$1,344,035.73.**

[7] Using the alternate calculations from footnotes 3-6, the total amount in controversy would be **$6,720,178.67.**